IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MARCELLAS HOFFMAN, <br><br> Defendant. | CRIMINAL ACTION <br> NO. 01-169 |

**OPINION**

**Slomsky, J.**                                                                                                         **June 15, 2021**

## I.    INTRODUCTION

Defendant Marcellas Hoffman is awaiting resentencing after the Court vacated his conviction for using and carrying three firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  (Doc. No. 305.)  In preparation for his resentencing, Defendant has filed multiple Motions and letters requesting that the Government produce various documents and files.  (Doc. Nos. 328, 330.)  For reasons discussed infra, he is not entitled to the requested materials, and his Motions will be denied.

## II.   BACKGROUND

### A.    Defendant's Criminal and Procedural History

Defendant is presently incarcerated for conspiring to commit armed robbery during a drug trafficking crime.  (See Doc. No. 333 at 6.)  In affirming his conviction on appeal, the Third Circuit Court of Appeals summarized the "pertinent facts" of Defendant's case:

> Juan Rosado ran a multi-million dollar drug organization distributing cocaine and heroin in Philadelphia and the surrounding areas.  Hoffman was one of Rosado's distributors.  Hoffman began purchasing heroin and cocaine from Rosado in the summer of 2000.  At the first drug sale, Hoffman bought 250 grams of cocaine for $7,000, paying cash for half the drugs and taking the other half on consignment.  A few days later Hoffman told Rosado that he had "finished with the drugs" and that

1

he wished to purchase more. At this second meeting Hoffman brought the $3,500 due for the drugs he had purchased on consignment and an additional $7,000 to buy more drugs. At a later meeting, Hoffman informed Rosado that "he could get rid of a truckload of drugs in Virginia and that he just needed somebody that could supply him with good quantities and good price." Hoffman thereafter bought narcotics from Rosado on many occasions for sale in Virginia.

In early 2001, Hoffman decided to rob Rosado and enlisted the help of a former co-worker, Gary Oliver. Hoffman telephoned Rosado and told him that he was coming to Philadelphia with $30,000 to purchase 500 grams of heroin and a kilogram of cocaine. Oliver testified that on the morning of January 20, 2001, he drove to Hoffman's house to pick him up and that when Hoffman came out of his house he was carrying a "bag with a couple of handguns in it and one of the butts of the guns was hanging out." The two men then drove to Camden, New Jersey where they met Hoffman's cousin [Gary McGahee].[1] The three men then drove to meet Rosado at Porky's Point restaurant.

Rosado picked up 390 grams of heroin for Hoffman, but not the cocaine requested because he had decided he was not ready "to do any more business with [Hoffman]." Rosado decided to meet Hoffman at 5911 Frontenac Street, Rosado's stash house. That evening, Rosado put the heroin in his truck and drove with his wife and mother-in-law to the Frontenac Street house. He sent David Vasquez, one of his employees, to meet Hoffman at Porky's Point and bring him back to the Frontenac Street house.

Vasquez did so and told Hoffman, Oliver, and [McGahee] to follow him to Frontenac Street. After arriving there, Hoffman gave one gun to Oliver, one to [McGahee], and kept one for himself. Hoffman and Oliver followed Vasquez into the house while [McGahee] waited outside. Rosado had not yet arrived. Once inside, Hoffman gave Vasquez only $16,000, not the agreed upon $30,000. After Vasquez demanded the remaining $14,000, Hoffman and Oliver pointed their guns at Vasquez, and Hoffman handcuffed him and demanded to know where the drugs and money were located. Vasquez answered that Rosado was bringing the drugs, and he was then thrown on the floor and pistol whipped by Hoffman, who shot him in the leg.

When Rosado arrived, he met Hoffman and they went to the second floor where Hoffman pointed a gun at Rosado, showed him a badge, told him he was under arrest and handcuffed him. Hoffman then demanded the drugs. Rosado told him the drugs were in the truck and that he would get them. Before they went to the truck, Hoffman searched Rosado and took $1,000 in cash, his credit cards, and his license. At some point during this time Hoffman also took 800–900 grams of cocaine from the kitchen.

---

[1] In its Opinion, the Third Circuit referred to McGahee by his alternative name "Casbah."

After exiting the Frontenac Street house, Hoffman placed Rosado in his truck with [McGahee] and walked towards Rosado's truck. Rosado freed himself, jumped out of Hoffman's truck, and ran towards his own truck. Hoffman chased Rosado and fired at him, hitting him once in the buttocks and grazing his leg. Rosado's wife began driving the truck towards the two men. Hoffman shot at the truck but ran out of bullets. Rosado then jumped into the truck and drove away, but Rosado's wife noted the license plate number of Hoffman's truck.

A short time later, Rosado's truck was pulled over by police. Rosado informed the police he had been the victim of a shooting and his wife gave the police Hoffman's license plate number. Based on information received from Rosado, the police then searched the Frontenac Street house, where they discovered Vasquez and Oliver, whom they detained, and recovered drugs, drug paraphernalia, and a loaded firearm.

That evening, a police officer observed Hoffman's truck run a red light in Camden, New Jersey. The officer pulled Hoffman over and, as he approached, observed Hoffman "making all kind[s] of movements in the vehicle." The officer ordered Hoffman to place his hands on the wheel, but Hoffman failed to comply. The officer then asked for Hoffman's documentation. Hoffman responded that he had left the documents at a friend's house. The officer ordered Hoffman to exit the car. The officer testified that Hoffman became "rambunctious" and began to "push off." The officer then conducted a pat down and felt something in Hoffman's upper left-hand pocket. The officer shined his flashlight into the pocket and was able to see it was a box of hollow-point ammunition. After securing Hoffman and [McGahee], who was in the truck, the officer performed an inventory search of the truck and found a loaded gun and several credit cards in the name of Roberto Roman, the alias used by Rosado. The officer took Hoffman into custody. He later posted bail and was released.

On January 25, 2001, the officer who had arrested Hoffman learned that there may have been an outstanding warrant for Hoffman or his vehicle. The officer went to the address Hoffman had given him and observed Hoffman on the street. When Hoffman saw the police he started to run but was caught and arrested. A federal warrant was issued for Hoffman on February 1, 2001, and he was transferred from state to federal custody on April 30, 2001. He was arraigned on May 7, 2001.

Hoffman's trial began on February 25, 2002. Prior to trial, the District Court had ruled that the government could not introduce evidence of Hoffman's prior drug dealings with Rosado. Nevertheless, on the second day of trial, the government elicited testimony from which the jury could infer that Hoffman and Rosado had had prior drug dealings. As a result, the District Court granted a mistrial. Before the case was retired, Hoffman moved to dismiss the indictment on double jeopardy grounds. The District Court denied that motion and we affirmed on November 26, 2002. The mandate was not issued until January 23, 2003.

3

United States v. Hoffman, 148 F. App'x 122, 124-26 (3d Cir. 2005) (second and seventh alterations in original) (citations omitted).

On March 6, 2003, a federal grand jury returned a second superseding indictment against Defendant charging him in six counts with:

1. Conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (Count One);

2. Attempt to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (Count Two);

3. Using and carrying three firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three);

4. Conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Four);

5. Using and carrying three firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Five); and

6. Being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Six).

(See Doc. No. 333 at 6.) Defendant was convicted on all six Counts and sentenced to life imprisonment. (See id. at 6-7.) After his sentencing, Defendant appealed, arguing his sentence was unconstitutional in light of the United States Supreme Court decision in United States v. Booker, which severed United States Sentencing Guidelines' provisions from mandatory application. See Hoffman, 148 F. App'x at 126; see also United States v. Booker, 543 U.S. 220, 258 (2005). The Third Circuit agreed with Defendant:

> At the time of Hoffman's sentencing, the District Court did not have the benefit of the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct.

4

> 738, 160, L.Ed.2d 621 (2005). Following Booker, we held in United States v. Davis, 407 F.3d 162 (3d Cir. 2005) (en banc), that a defendant's substantial rights may have been affected where the District Court erred by treating the Guidelines as mandatory rather than advisory. Therefore, having concluded that sentencing issues that arise in light of the Booker decision are best determined by the District Court in the first instance, Davis, 407 F.3d at 165-66, we will affirm Hoffman's conviction but vacate the sentence and remand for re-sentencing.

Hoffman, 148 F. App'x at 130-31. In light of the Third Circuit's decision, Defendant was resentenced to a total term of sixty-five years' imprisonment, including a twenty-five-year sentence on Count Five to run consecutive with all other Counts, followed by nineteen years' supervised release. (See Doc. No. 333 at 7-8.)

Later on, the Third Circuit Court of Appeals granted Defendant authorization to file a second or successive 28 U.S.C. § 2255 motion to challenge his § 924(c) conviction in accordance with the United States Supreme Court decision in United States v. Davis. See 139 S.Ct. 2319, 2336 (2019) (holding "crime of violence" language in 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague).[2] The Government did not oppose Defendant's Motion, and on March 4, 2020, the Court

---

[2] 18 U.S.C. § 924(c) "authorizes heightened criminal penalties for using or carrying a firearm . . . 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.'" United States v. Davis, 139 S.Ct. 2319, 2324 (2019) (quoting 18 U.S.C. § 924(c)). Section 924(c)(3) contains two definitions of a "crime of violence." See § 924(c)(3). Section 924(c)(3)(B) defines "crime of violence" as "an offense that is a felony and . . . that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). However, in Davis, the Supreme Court held that Section 924(c)(3)(B)'s "crime of violence" definition is unconstitutionally vague. See Davis, 139 S.Ct. at 2336. The practical import of Davis is that courts are now tasked with determining whether a prior conviction falls within the "crime of violence" definition in § 924(c)(3)(A): "an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." § 924(c)(3)(A).

Regarding Defendant Hoffman, he and the Government "agree[d] that [Defendant]'s conviction" under § 924(c) "is unconstitutional because the predicate offense—conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951—is not categorically a crime of violence after Davis." (Doc. No. 304 ¶ 4.) Thus, the Government did not oppose the Court

5

vacated Defendant's judgment on Count Five. (See Doc. Nos. 304, 305.) Thus, Defendant is awaiting resentencing on his remaining convictions.

### B.  Gary McGahee's § 2255 Motion and Hearing

As mentioned above, Gary McGahee, Defendant's cousin from Camden, New Jersey, served as Defendant's "wheel man" during the drug robbery. (See Doc. No. 332 at 3.) Because of his role, McGahee was apprehended, charged and tried separately from Defendant, and convicted. (See id.) On June 14, 2007, McGahee filed a Motion to Vacate his conviction pursuant to 28 U.S.C. § 2255. (See Crim. No. 03-788, Doc. No. 63.) In support of his Motion, McGahee turned to three of his friends—Frank Vogues, Frank Hutchinson, and Jose Sindo—who provided affidavits claiming they were with McGahee throughout the night of January 20, 2001, the date of the robbery. (See Doc. No. 332 at 3.)

The affidavits of Vogues and Hutchinson are nearly identical. (See id. at 4.) Both friends claim they spent the night of January 20, 2001 "drinking and bar-hopping" with McGahee and Sindo. (Id.) They also state that Defendant joined them after he had been arrested, made bail, and been released from custody. (See id.) Jose Sindo, a Camden County deputy sheriff, did not mention Defendant in his affidavit. (See id. at 6; Crim. No. 03-788, Doc. No. 75 at 18.)

On March 25, 2008, another court in this district held a hearing on McGahee's Motion. (See Doc. No. 332 at 2.) At the hearing, Vogues testified that Defendant, once he met with the others, recounted the events of that day:

> He had told me about an incident that happened in Philadelphia with him and a couple other guys that were with him—two other guys that was with him. One of

---

granting Defendant relief under 28 U.S.C. § 2255 regarding his § 924(c) conviction, and he awaits resentencing on his remaining convictions. (See id. ¶ 5; see also Doc. No. 305.)

> the guys [was Gary Oliver]³ and the other guy's name I couldn't remember. They had went over there to do a drug deal. The drug deal went bad, they tried to rob the guy. One of his co-defendants got caught up in the house after the—the raid came, and Mr. Hoffman and the other guy [Gary Oliver] had made—posted bail.

(Id. at 4) (footnote omitted). Neither Hutchinson nor Sindo mentioned Defendant during the hearing. (See id.)

On July 17, 2008, McGahee's Motion was granted on the basis that his attorney did not adequately explore a possible alibi defense created by the three witnesses' statements. (See Crim. No. 03-788, Doc. No. 75.) McGahee obtained a new trial, and eventually pled guilty to the charges against him. (See Doc. No. 332 at 5.)

### C. Defendant's Request for the Transcript from McGahee's § 2255 Hearing and His Instant Motions

On January 4, 2021, the Court held a video hearing with Government counsel and Defendant, wherein Defendant made two requests. First, he moved to represent himself because of a conflict of interest with his attorneys from the Defender Association of Philadelphia, which the Court granted. (See id. at 2; see also Doc. No. 324.) Second, he asked for a copy of the transcript from McGahee's § 2255 hearing. (See Doc. No. 332 at 2.) The Court also granted his second request, and the Government provided Defendant with a copy of the transcript. (See id.)

After the hearing, Defendant filed the two instant Motions (collectively "Motions to Compel Discovery"),⁴ wherein he requests a plethora of documentation from the Government to

---

³ In his testimony, Vogues referred to Oliver, Defendant Hoffman's co-Defendant, by his nickname "Biggie Smalls."

⁴ Defendant titles his Motions as a "Motion to Compel the Government to Produce the Requested Discovery" and a "Second Motion to Compel the Government to Produce Brady Evidence and the Personnel Files of Law Enforcement Officers Involved in the Case." (See Doc. Nos. 328, 330.)

7

assist him at his resentencing hearing. (See Doc. Nos. 328, 330.) Throughout his Motions he requests the following materials:

1. [T]he initial contact by the government and [McGahee's] prior attorney [Stuart] Patchen[5] of the Defender Association of Philadelphia that led up to Gary McGahee['s] and the government's quid pro quo plea agreement after he had been granted a new trial before sentencing and the conflict of interest hearing;

2. [A]ny and all agreement[s] with Jose Sindo Camden County Deputy Sheriff, specifically as it applies to any evidence that negates [Defendant's] involvement with Gary McGahee in relation to the crime committed on January 20, 2001;

3. [I]nitial emails between the government and . . . Stuart Patchen that led up to the agreement after being granted a new trial; . . .

4. [T]he affidavit of probable cause for the arrest of Gary McGahee;

5. [T]he affidavits of Frank Vogues, Frank Hutchinson, and Jose Sindo, alon[g] with [copies] of their testimonies from the 2255 hearing before Judge Buckwalter;

6. [T]he addresses and work places for such witnesses and any updated telephone contact information;

7. [A]ny and all statements by Jose Sindo, conversations, between the government after his testimony from the hearing;

8. [Any] and all emails, memo[]s, conversations between Detective Andrew Callaghan[6] between Jose Sindo after his testimony from the 2255 hearing;

9. [T]he investigative agency's files and evidence and information gathered during the investigation[];

10. [P]ersonnel files of police officers Jose Sindo and Detective Andrew Callaghan;

---

[5] It appears from Defendant's Motions and Gary McGahee's criminal docket that Stuart Patchen served as McGahee's appointed lawyer during his § 2255 hearing and his subsequent guilty plea.

[6] Detective Callaghan is a Philadelphia Police detective who was assigned to investigate Defendant's case and interviewed co-Defendant Gary Oliver about McGahee's role in the drug robbery. (See Doc. No. 328 at 3; Crim. No. 03-788, Doc. No. 75 at 23, 25.)

11. [R]ough agent notes;

12. Agency files related to [Defendant's] case be that DEA, FBI, Camden County Sheriff Department, Virginia Police Department, FDC Philadelphia records related to [Defendant];

13. The Federal Defender of Philadelphia Office related to conflict counsels; [and]

14. Confidential informant (CI) witnesses (CW)/Human Source (CHS)/(CS) files concerning witnesses that testified against [Defendant] and or informants who provided the government with information such as Brent Thomas[,] Gary Oliver's attorney.

(Doc. No. 338 at 2-3.)  Defendant contends he is entitled to receive these documents because they constitute Brady and Giglio materials.  (See Doc. No. 330 at 3, 6); see also Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

On January 29, 2021, the Government filed a Response to Defendant's Motions to Compel Discovery.  (Doc. No. 332.)  In the Response, the Government groups Defendant's requests into three categories:  (1) documents Defendant claims entitlement to under Brady that relate to McGahee and his three alibi witnesses (the "McGahee Witnesses") from his § 2255 hearing;  (2) documents Defendant claims entitlement to under Giglio;  and (3) confidential informant files Defendant requests access to.  (See id. at 3, 6-7.)  The Government submits that Defendant is not entitled to the "vast array of items" in the three categories because it either has already provided them, cannot provide them, or is not required to provide them under Brady or Giglio.  (Id. at 3.)

First, the Government argues that Defendant is not entitled to documents related to McGahee and the McGahee Witnesses under Brady because the witnesses' testimony does not exculpate Defendant.  (See id. at 4.)  Included in this category are Defendant's requests for public records, as Defendant states these requests relate to McGahee and the McGahee Witnesses.  (See

9

Doc. No. 330 at 5-6.)  Additionally, the Government claims that it cannot produce the following requested items because they do not exist:

> 302 reports[7] of McGahee after his new trial was affirmed on appeal; statements made by McGahee to the government; statements made by Sindo and other McGahee . . . [W]itnesses to the government after the hearing; and any emails, memos or [conversations] between these people and the [G]overnment after the 2255 hearing. . . . [;] notes made by the Federal Defender who represented McGahee at the hearing. . . .[;] evidence of any "quid pro quo" agreement with McGahee related to his eventual guilty plea.

(Doc. No. 332 at 5.)  Moreover, it asserts that it is not required to disclose any contact information for these individuals because Defendant can readily obtain it on his own.  (See id. at 5.)

Second, the Government states that it is not required to disclose any requested materials under Giglio because it does not plan on calling any witnesses at Defendant's resentencing hearing. (See id. at 6.)  Finally, it submits that Defendant is not entitled to receive confidential informant files because he is only facing resentencing, not a new trial, and thus cannot meet his burden of showing the files are relevant to a defense or determination of guilt.  (See id. at 7.)  In this regard, the Government maintains that Defendant is merely trying to gather documents to retry his case, which is not appropriate or relevant to his resentencing.  (See id. at 2.)

On February 22, 2021, Defendant filed a Reply that summarizes the requests in his two Motions.  (Doc. No. 338.)

### III. ANALYSIS

In his Motions to Compel Discovery, Defendant requests various documents he claims entitlement to under Brady and Giglio.  (See Doc. Nos. 328, 330.)  For purposes of this Opinion, the Court will group Defendant's requests into three categories:  (1) documents Defendant claims

---

[7]  A 302 report is the form used by Federal Bureau of Investigation agents to summarize an interview.

10

entitlement to under Brady that relate to McGahee and his three alibi witnesses (the "McGahee Witnesses") from his § 2255 hearing; (2) documents Defendant claims entitlement to under Giglio; and (3) confidential informant files Defendant requests access to.[8]  (See Doc. No. 332 at 3, 6-7.) For reasons discussed below, Defendant's Motions will be denied.

      A.      **Defendant's Requests for Documents Related to McGahee and the McGahee Witnesses Under <u>Brady</u>**

First, the Government is not required to disclose Defendant's requests related to McGahee and the McGahee Witnesses under Brady because the documents do not exculpate Defendant. Defendant argues that he is entitled to receive a bevy of documents related to McGahee and the McGahee Witnesses because they are necessary for him conduct investigations, pursue possible defenses, and assess the Government's evidence and witnesses ahead of his resentencing. (See Doc. No. 330 at 6.) To the contrary, the Government opposes disclosure of the requested documents because the testimony of McGahee Witnesses does not exculpate Defendant, some of the requested documents do not exist, and the requested contact information does not fall within Brady's scope. (See Doc. No. 332 at 3-6.)

The government is required to disclose to a criminal defendant evidence that is favorable to the accused and "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Bagley, 473 U.S. 667, 674 (1985). Evidence is material either to guilt or punishment if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682 (opinion of Blackmun, J.); id. at 685 (White, J., concurring in part and concurring in judgment). See also Kyles v. Whitley, 514 U.S. 419, 433-37 (1995) (rephrasing the inquiry as whether "there is a

---

[8] Defendant's Motions are an amalgam of duplicitous document requests and scattershot legal arguments. The Court's analysis is a result of a concerted effort to ascertain which arguments apply to each request.

11

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (quotation marks and citations omitted).  However, the "mere possibility" that an undisclosed item may have affected the outcome of the trial does not establish materiality.  United States v. Agurs, 427 U.S. 97, 109-10 (1976).

Despite the government's disclosures required under Brady and its progeny, there are significant limitations to what actions the government must take.  Importantly, "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . ." Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  Because Brady is a disclosure rule, and not a discovery one, absent a defendant's showing that Brady material has not been disclosed, "the prosecutor's decision on disclosure is final.  [A] Defen[dant] . . . has no constitutional right to conduct his own search of the [government]'s files to argue relevance." Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).  Moreover, although Brady places an affirmative obligation on prosecutors to learn of favorable evidence known by others working on the government's behalf in the case, there is no "duty . . . to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." United States v. Merlino, 349 F.3d 144, 154 (3d Cir. 2003) (quotation marks omitted) (quoting United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996)).  Finally, it is a "well-established principle that the government is not obliged under Brady to furnish a defendant with information which he . . . can obtain himself." United States v. Pelullo, 399 F.3d 197, 202 (3d Cir. 2005) (quotation marks and citation omitted); see also United States v. Tadros, 310 F.3d 999, 1005 (7th Cir. 2002) ("Brady . . . does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel.").

n
n

Here, the materials related to McGahee and the McGahee Witnesses that Defendant requests are not subject to disclosure under Brady. In his Motions, Defendant requests the following related to McGahee and the McGahee Witnesses:

1. [T]he initial contact by the government and [McGahee's] prior attorney [Stuart] Patchen of the Defender Association of Philadelphia that led up to Gary McGahee['s] and the government's quid pro quo plea agreement after he had been granted a new trial before sentencing and the conflict of interest hearing;

2. [A]ny and all agreement[s] with Jose Sindo Camden County Deputy Sheriff, specifically as it applies to any evidence that negates [Defendant's] involvement with Gary McGahee in relation to the crime committed on January 20, 2001;

3. [I]nitial emails between the government and . . . Stuart Patchen that led up to the agreement after being granted a new trial; . . .

4. [T]he affidavit of probable cause for the arrest of Gary McGahee;

5. [T]he affidavits of Frank Vogues, Frank Hutchinson, and Jose Sindo, alon[g] with [copies] of their testimonies from the 2255 hearing before Judge Buckwalter;

6. [T]he addresses and work places for such witnesses and any updated telephone contact information;

7. [A]ny and all statements by Jose Sindo, conversations, between the government after his testimony from the hearing;

8. [Any] and all emails, memo[]s, conversations between Detective Andrew Callaghan between Jose Sindo after his testimony from the 2255 hearing;

9. [T]he investigative agency's files and evidence and information gathered during the investigation[];

10. [P]ersonnel files of police officers Jose Sindo and Detective Andrew Callaghan;

11. [R]ough agent notes;

12. Agency files related to [Defendant's] case be that DEA, FBI, Camden County Sheriff Department, Virginia Police Department, FDC Philadelphia records related to [Defendant];

13. The Federal Defender of Philadelphia Office related to conflict counsels; . . .

(Doc. No. 338 at 2-3.)

Primarily, Defendant is not entitled to any of these documents and files under the guise that they constitute Brady materials because there is no "reasonable probability that, had the evidence been disclosed to [him], the result of the proceeding would have been different." Bagley, 473 U.S. at 682 (opinion of Blackmun, J.). Defendant is not facing a new trial. Five of his convictions have been affirmed on appeal, and he must be resentenced because his § 924(c) conviction on Count Five has been vacated. (See Doc. No. 305.) See also Hoffman, 148 F. App'x at 130-31 (upholding Defendant's conviction and remanding for resentencing). With this in mind, Defendant cannot show that the requested documents and files would have any relevance to his upcoming resentencing hearing. For this reason alone, Defendant's request will be denied.

Despite their irrelevance to his resentencing, Defendant's requests also fail for additional reasons. First, the McGahee Witnesses do not provide helpful testimony for Defendant. In their affidavits, Vogues and Hutchinson state that Defendant met them after he had been arrested, made bail, and been released from custody.[9] (See Doc. No. 332 at 4.) Given the passing references to Defendant after the alleged date of the commission of the crimes in this case, these statements do not exculpate Defendant by providing him with an alibi defense. In fact, Vogues' testimony at McGahee's § 2255 hearing implicated Defendant by claiming that he confessed to committing of the drug robbery. (See id.)

Second, the Government avers that the following requested documents do not exist:

> 302 reports of McGahee after his new trial was affirmed on appeal; statements made by McGahee to the government; statements made by Sindo and other McGahee . . . [W]itnesses to the government after the hearing; and any emails, memos or "converstation" between these people and the [G]overnment after the 2255 hearing. . . . [;] notes made by the Federal Defender who represented

---

[9] Jose Sindo did not note Defendant's presence in his affidavit. (See Doc. No. 332 at 4.)

> McGahee at the hearing. . . .[;] evidence of any "quid pro quo" agreement with McGahee related to his eventual guilty plea.

(Doc. No. 332 at 5.) Brady does not require the Government to disclose documents it does not have in its possession or that do not exist. See Merlino, 349 F.3d at 154. To the extent that Defendant requests nonexistent materials, the Government is not required to turn them over.

Third, because Brady is not a discovery rule, "the [G]overnment is not obliged . . . to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." Pelullo, 399 F.3d at 202 (quotation marks omitted) (quoting United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984)). Defendant can obtain the contact information of McGahee and the McGahee Witnesses with reasonable diligence. Also, because Defendant received a copy of the transcript from McGahee's § 2255 hearing, his request for the Witnesses' testimony is moot. (See Doc. No. 332 at 2.)

Finally, Defendant does not have a right to rummage through the enumerated Government files and notes. As discussed supra, Defendant has not shown a withholding of Brady material, meaning "the prosecutor's decision on disclosure is final." Ritchie, 480 U.S. at 59. Absent a showing of withheld materials, Defendant "has no constitutional right to conduct his own search" of the Government's files. Id. Further, because the Court granted Defendant's request to represent himself pro se, his request to search through the Federal Defender of Philadelphia Office's files for information related to conflicts of interest is moot.[10] Moreover, and most importantly, the documents requested appear to be relevant only to guilt or innocence, which is not at issue at Defendant's upcoming resentencing. The case will not be retried at sentencing, only a resentencing will occur.

---

[10] During a January 4, 2021 hearing, Defendant moved to represent himself because of a conflict of interest with his attorneys from the Defender Association of Philadelphia, and the Court granted his request. (See Doc. Nos. 332 at 2; 324.)

15

For all these reasons, Defendant's Brady requests will be denied.

### B. Defendant's Requests for Impeachment Materials under Giglio

Next, the Government is not required to produce any materials to Defendant under Giglio because it does not intend to call witnesses at Defendant's resentencing hearing. In his Motions to Compel Discovery, Defendant asserts entitlement to some of his requested documents under Giglio. (See Doc. No. 328 at 5.) Conversely, the Government submits that it is not required to produce any materials under Giglio because the case only applies to witnesses that testify at the behest of the Government. (See Doc. No. 333 at 6.) However, it does not intend to call any witnesses at Defendant's resentencing hearing. (See id.)

Under Giglio, the government is required to disclose any evidence that can be used to impeach testifying witnesses. See Giglio v. United States, 405 U.S. 150, 154 (1972). "However, there is no requirement that the government must disclose to the defense that material which would allow the defendant to impeach his own witness." United States v. Kimley, 60 F. App'x 369, 371 (3d Cir. 2003). See also Vas v. United States, No. 04-489, 2012 WL 3651105, at *5 (E.D. Pa. Aug. 24, 2012) ("[W]hile a defendant has the right to impeach his own witnesses, the Government is not obligated to produce non-exculpatory materials which can be used to impeach the truthfulness of a defense witness.").

Here, only Defendant, and not the Government, intends to call witnesses at Defendant's resentencing hearing. (See Doc. No. 332 at 6.) Thus, because the Government is not required to produce impeachment evidence for Defendant's own witnesses, it is not required to provide Defendant with any impeachment materials under Giglio. However, should the Government later intend to call witnesses at the hearing, it would be required to produce impeachment evidence. In any event, Defendant has not shown how any evidence he contends falls under Giglio is relevant to his resentencing.

### C. Defendant's Requests for Confidential Informant Files and Related Materials

Finally, Defendant is not entitled to access confidential informant files because he has not shown their relevance to a defense, a fair determination of his guilt, or that this information is relevant to his resentencing. In his Motions, Defendant requests:

> 14. Confidential informant (CI) witnesses (CW)/Human Source (CHS)/(CS) files concerning witnesses that testified against [Defendant] and or informants who provided the government with information such as Brent Thomas Gary Oliver's attorney.

(Doc. No. 338 at 3.) The Government submits that to be afforded access to these documents, Defendant must show their relevance to a defense or determination of his guilt, which he cannot do because he has already been adjudged guilty and is only facing resentencing. (See Doc. No. 332 at 7.)

"While the Government has a privilege to withhold the identity of confidential informants, a defendant can overcome this privilege if he demonstrates that disclosure is relevant and helpful to [his] defense or is essential to a fair determination of his guilt." United States v. Gatlin, 613 F.3d 374, 379-80 (3d Cir. 2010) (alteration in original) (quotation marks omitted) (quoting United States v. Johnson, 302 F.3d 139, 149 (3d Cir. 2002)). However, "[a] defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be 'relevant and helpful to the defense . . . or is essential to a fair determination' of the case." United States v. Brown, 3 F.3d 673, 679 (3d Cir. 1993) (quoting Roviaro v. United States, 352 U.S. 53, 60-61 (1957)).

Here, Defendant is not entitled to receive any confidential informant files or related materials because he cannot show their relevance to either a defense or a fair determination of his guilt or to his resentencing. As noted at length above, Defendant has already stood trial and has been adjudged guilty. (See Doc. No. 332 at 7.) Defendant's guilt has been fairly determined and

affirmed on appeal. Thus, any confidential informant files and related materials are not relevant to his resentencing hearing and the Government does not have to disclose them.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel the Government to Produce the Requested Discovery (Doc. No. 328) and Second Motion to Compel the Government to Produce Brady Evidence and the Personnel Files of Law Enforcement Officers Involved in the Case (Doc. No. 330) will be denied. An appropriate Order follows.