IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :

v.      :    CRIMINAL NO. 01-169

MARCELLAS HOFFMAN,     :
      a/k/a "Mo"

**GOVERNMENT'S SENTENCING MEMORANDUM FOR
DEFENDANT'S FOURTH RE-SENTENCING HEARING**

The United States of America, by David Metcalf, United States Attorney for the Eastern

District of Pennsylvania, and David E. Troyer, Assistant United States Attorney for the district,

hereby files this Sentencing Memorandum for defendant Marcellas Hoffman's fourth re-

sentencing hearing, in furtherance of which it states the following:

## I.     INTRODUCTION

Defendant Marcellas "Mo" Hoffman is an unrepentant violent drug trafficker and con

artist who planned and organized a drug robbery from a supplier, shot two men in the course of

that drug robbery, and threatened the lives of witnesses and of the DEA Task Force Officer who

served as case agent in the investigation and prosecution of this case.

Hoffman is now scheduled for a fifth sentencing hearing, a fourth re-sentencing, having

received a series of beneficial changes in the law, appellate rulings, and benevolent reductions

from the courts, which have served to incrementally reduce his overall sentence of imprisonment

from life plus 35 years (imposed in 2004), to 65 years (780 months, in 2006), to 450 months (in

2021), to 380 months (on June 1, 2023).

Although Hoffman has predictably submitted yet another 45 pages of self-laudatory

claims of rehabilitation, those claims are belied by his persistent efforts to still deny the facts of

his case, proven beyond a reasonable doubt to a unanimous jury and affirmed on appeal. No

1

flowery quotes or prison certificates for completing "Family Communications" can overcome his violent tendencies.

Since the most recent sentencing on June 1, 2023, there have been no substantial changes. The only reason we are having a fifth sentencing hearing is because the Third Circuit found fault with this Court's rendering of the *Peppers / Faretta* colloquy. Hoffman merits no further reduction and should receive none from this Court. Thus, the government suggests that this Court simply re-impose the same sentence it imposed three years ago.

## II.    FACTUAL BACKGROUND

The following factual summary is copied from the opinion of the Third Circuit affirming Hoffman's conviction, in *United States v. Hoffman*, 148 F. App'x 122, 124-26 (3d Cir. 2005) (Appeal No. 04-1449).

Juan Rosado ran a multi-million dollar drug organization distributing cocaine and heroin in Philadelphia and the surrounding areas. Hoffman was one of Rosado's distributors. Hoffman began purchasing heroin and cocaine from Rosado in the summer of 2000. At the first drug sale, Hoffman bought 250 grams of cocaine for $7,000, paying cash for half the drugs and taking the other half on consignment. A few days later Hoffman told Rosado that he had "finished with the drugs" and that he wished to purchase more. App. at 200. At this second meeting Hoffman brought the $3,500 due for the drugs he had purchased on consignment and an additional $7,000 to buy more drugs. At a later meeting, Hoffman informed Rosado that "he could get rid of a truckload of drugs in Virginia and that he just needed somebody that could supply him with good quantities and good price." App. at 201. Hoffman thereafter bought narcotics from Rosado on many occasions for sale in Virginia.

In early 2001, Hoffman decided to rob Rosado and enlisted the help of a former co-worker, Gary Oliver. Hoffman telephoned Rosado and told him that he was coming to Philadelphia with $30,000 to purchase 500 grams of heroin and a kilogram of cocaine. Oliver testified that on the morning of January 20, 2001, he drove to Hoffman's house to pick him up and that when Hoffman came out of his house he was carrying a "bag with a couple of handguns in it and one of the butts of the guns was hanging out." App. at 332. The two men then drove to Camden, New Jersey where they met Hoffman's cousin "Casbah."[1] The three men then drove to meet Rosado at Porky's Point restaurant.

Rosado picked up 390 grams of heroin for Hoffman, but not the cocaine requested because he had decided he was not ready "to do any more business with [Hoffman]." App. at 203. Rosado decided to meet Hoffman at 5911 Frontenac Street, Rosado's stash house. That evening, Rosado put the heroin in his truck and drove with his wife and mother-in-law to the Frontenac Street house. He sent David Vasquez, one of his employees, to meet Hoffman at Porky's Point and bring him back to the Frontenac Street house.

Vasquez did so and told Hoffman, Oliver, and Casbah to follow him to Frontenac Street. After arriving there, Hoffman gave one gun to Oliver, one to Casbah, and kept one for himself. Hoffman and Oliver followed Vasquez into the house while Casbah waited outside. Rosado had not yet arrived. Once inside, Hoffman gave Vasquez only $16,000, not the agreed upon $30,000. After Vasquez demanded the remaining $14,000, Hoffman and Oliver pointed their guns at Vasquez, and Hoffman handcuffed him and demanded to know where the drugs and money were located. Vasquez answered that Rosado was bringing the drugs, and he was then thrown on the floor and pistol whipped by Hoffman, who shot him in the leg.

---

[1] "Casbah," the "wheel man," was later identified as Gary McGahee, who was later apprehended, tried separately, and convicted.

When Rosado arrived, he met Hoffman and they went to the second floor where Hoffman pointed a gun at Rosado, showed him a badge, told him he was under arrest and handcuffed him. Hoffman then demanded the drugs. Rosado told him the drugs were in the truck and that he would get them. Before they went to the truck, Hoffman searched Rosado and took $1,000 in cash, his credit cards, and his license. At some point during this time Hoffman also took 800-900 grams of cocaine from the kitchen.

After exiting the Frontenac Street house, Hoffman placed Rosado in his truck with Casbah and walked towards Rosado's truck. Rosado freed himself, jumped out of Hoffman's truck, and ran towards his own truck. Hoffman chased Rosado and fired at him, hitting him once in the buttocks and grazing his leg. Rosado's wife began driving the truck towards the two men. Hoffman shot at the truck but ran out of bullets. Rosado then jumped into the truck and drove away, but Rosado's wife noted the license plate number of Hoffman's truck.

A short time later, Rosado's truck was pulled over by police. Rosado informed the police he had been the victim of a shooting and his wife gave the police Hoffman's license plate number. Based on information received from Rosado, the police then searched the Frontenac Street house, where they discovered Vasquez and Oliver, whom they detained, and recovered drugs, drug paraphernalia, and a loaded firearm.

That evening, a police officer observed Hoffman's truck run a red light in Camden, New Jersey. The officer pulled Hoffman over and, as he approached, observed Hoffman "making all kind[s] of movements in the vehicle." App. at 400. The officer ordered Hoffman to place his hands on the wheel, but Hoffman failed to comply. The officer then asked for Hoffman's documentation. Hoffman responded that he had left the documents at a friend's house. The officer ordered Hoffman to exit the car. The officer testified that Hoffman became

4

"rambunctious" and began to "push off." The officer then conducted a pat down and felt something in Hoffman's upper left-hand pocket. The officer shined his flashlight into the pocket and was able to see it was a box of hollow-point ammunition. After securing Hoffman and Casbah, who was in the truck, the officer performed an inventory search of the truck and found a loaded gun and several credit cards in the name of Roberto Roman, the alias used by Rosado. The officer took Hoffman into custody.

### III.    PROCEDURAL HISTORY

On April 18, 2001, a grand jury in the Eastern District of Pennsylvania returned a five-count superseding indictment charging defendant Marcellas Hoffman with conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 (Count One); carrying a firearm during and in relation to a drug felony, in violation of 18 U.S.C. § 924(c) (Count Two); brandishing a firearm during and in relation to a drug felony, in violation of 18 U.S.C. § 924(c) (Count Three); discharging a firearm during and in relation to a drug felony, in violation of 18 U.S.C. § 924(c) (Count Four); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Five).

Hoffman's first trial began on February 25, 2002. On the second day of trial, the Court (Hon. Robert F. Kelly, J.) determined that the government's questioning of its first witness, Juan Rosado, allowed jurors to infer that Rosado had previously sold drugs to Hoffman, and thus ran afoul of the court's earlier in limine ruling excluding certain evidence under Federal Rule of Evidence 404(b). The district court therefore granted Hoffman's motion for a mistrial.

On March 6, 2003, the federal grand jury returned a second superseding indictment against Hoffman. The new indictment presented six counts: conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (Count One); attempt to possess with intent to distribute

heroin, in violation of 21 U.S.C. § 846 (Count Two); using and carrying three firearms during and in relation to a drug trafficking crime (that is, the offense charged in Count Two), in violation of 18 U.S.C. § 924(c) (Count Three); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Four); using and carrying three firearms during and in relation to a crime of violence (that is, the conspiracy to commit Hobbs Act robbery charged in Count Four), in violation of § 924(c) (Count Five); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Six).

The retrial was held from October 7 through October 10, 2003, after which Hoffman was convicted on all counts.

The Court held its first sentencing hearing on February 17, 2004. The Court sentenced Hoffman to life imprisonment on Counts One, Two, and Six to run concurrently. On Count Three, he was sentenced to 10 years to run consecutively to the life sentences. On Count Four, he was sentenced to two years, to run concurrently with the 10-year sentence. Finally, on Count Five, he was sentenced to 25 years to run consecutively to the life sentence and the 10-year sentence.

Hoffman timely appealed his conviction and sentence. He raised a myriad of issues, including sufficiency of the evidence, double jeopardy, violations of the Fourth Amendment, violations of due process and the Speedy Trial Act, ineffective assistance of counsel, and sentencing errors. On September 13, 2005, the Third Circuit affirmed Hoffman's conviction, but vacated Hoffman's sentence, holding under *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005) (en banc), that a defendant's substantial rights may have been affected where the district court treated the Guidelines as mandatory rather than advisory. The Third Circuit remanded the case

for resentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Hoffman*, 148 F. App'x 122 (3d Cir. 2005).

On December 11, 2006, the Court reconsidered the sentence. It reaffirmed the findings of the original PSR with respect to the guidelines calculations, and elected to vary from the now-advisory range. The Court sentenced Hoffman to 30 years' imprisonment on Counts One, Two, and Six, and a concurrent term of 20 years' imprisonment on Count Four. With respect to Counts Three and Five, the Court sentenced the defendant to sentences of ten years and 25 years, each to run consecutively to any other sentence imposed. Thus, the total sentence of imprisonment was 65 years. All of these sentences were to be followed by a term of eight years' supervised release on Counts One and Two, six years' supervised release for Counts Three and Five, and five years' supervised release for Counts Four and Six. Finally, the Court imposed a special assessment of $600.

Hoffman appealed again, and the Third Circuit affirmed the judgment. *United States v. Hoffman*, 271 F. App'x 227 (3d Cir. 2008). Hoffman also presented a variety of other post-conviction challenges over the years, all of which were unsuccessful prior to the challenge to Count Five. That included an initial motion under 28 U.S.C. § 2255 that Hoffman filed and the Court later denied in 2009.

In November 2019, the Third Circuit granted permission for Hoffman to file a successive 2255 motion challenging the 924(c) conviction in Count Five on the basis of the decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). On March 4, 2020 (docket no. 304), defense counsel advised the Court: "Mr. Hoffman and the government agree that Mr. Hoffman's conviction on Count Five is unconstitutional because the predicate offense—conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951—is not categorically a crime of

7

violence after *Davis*. Accordingly, the parties agree that § 2255 relief should be granted and Mr. Hoffman should be resentenced." On the same day (docket no. 305), the Court entered an order vacating the judgment.

Hoffman continued to face a significant sentence on the remaining counts, in light of his criminal conduct and extensive criminal record. He had three prior felony drug trafficking convictions and an armed robbery conviction. PSR ¶¶ 74-77. He also had four juvenile adjudications and nine other arrests. PSR ¶¶ 69-72. Hoffman's crimes in the instant case also constituted a violation of his parole from the Commonwealth of Virginia. PSR ¶ 78. His total offense level of 37 and criminal history category of VI resulted in a recommended guidelines range of 360 months to life, plus a consecutive 120 months, for a total range of 480 months to life. PSR ¶ 42.

In November 2020, prior to the resentencing hearing, Hoffman filed a letter asking to proceed *pro se*. He stated that his counsel, from the Defenders Association, suffered from a possible conflict of interest in that they represented a co-defendant. Appx 188-192. Hoffman added: "Mr. Hoffman has been studying his case for 20 years now, and are very familiar with his case and are very capable of representing himself at his resentencing hearing and very familiar with the Federal Sentencing Guidelines." App'x 191.

On January 4, 2021, the district court held a hearing to address Hoffman's request, and after conducting the required colloquy, allowed Hoffman to waive his right to counsel and proceed pro se, and permitted counsel to withdraw.2 App'x 194-224. The court also appointed Brian J. Zeiger as standby counsel.

On January 21, 2021, Hoffman filed a pro se sentencing memorandum, App'x 327, that

---

2  The hearing was held by teleconference due to the pandemic.

incorporated a 64-page, detailed *pro se* memorandum he submitted 14 years earlier, on

December 7, 2006 (ECF 224), in advance of the first resentencing hearing following the *Booker*

decision. These submissions discussed the applicable guidelines and 18 U.S.C. § 3553(a)

sentencing factors in great detail.

The resentencing hearing was held on June 17, 2021. At that time, Hoffman, representing

himself, presented numerous, detailed objections to the findings in the presentence report,

including to the inclusion of prior convictions, to various statements about the facts of the

offenses, and to the calculation of drug quantity. App'x 242-327. He also presented a lengthy

allocution attesting to his rehabilitation and efforts to improve himself, and sought a downward

departure or variance based on his mental health issues, his age when he engaged in criminal

conduct, and sentencing disparities, as well as the views of several family members whose

testimony he presented. App'x 354-364.

At the conclusion of the hearing, the court vacated the 25-year consecutive term that had

been imposed on Count Five, and also granted a modest variance on the remaining counts of

conviction. On those counts, the court reduced the total sentence that had previously been

imposed from 480 months to 450 months. Specifically, the new sentence, totaling 450 months,

consisted of concurrent terms of 330 months on Counts One and Two, 240 months on Count

Four, and 180 months on Count Six; and a consecutive sentence of 120 months on Count Three.

Hoffman filed an appeal, in No. 21-2178. The Third Circuit Clerk at the outset advised

Hoffman that he could proceed *pro se* or elect to be represented by attorney Brian Zeiger, who

had been standby counsel. On August 8, 2021, Hoffman filed a statement waiving counsel and

electing to proceed pro se. In a letter to the Third Circuit filed on October 28, 2021 (docket no.

23), Zeiger stated: "Please note from the outset of my appointment on this matter, Mr. Hoffman

has instructed me that he wished to proceed pro se and wanted my help only as back-up counsel. Mr. Hoffman never sought any advice from me, and disregarded any legal advice I offered."

In the appeal, Hoffman presented a single-spaced 59-page brief on March 15, 2022, arguing, in part, that the sentence exceeded that permitted by the Sentencing Guidelines and was procedurally and substantively unreasonable. He presented myriad briefed points related to the sentencing calculation and determination.

On February 6, 2023, the Third Circuit issued an opinion denying most of Hoffman's claims but agreeing with one – that the imposition of a mandatory minimum term of imprisonment of 10 years on Count Three, for a violation of 18 U.S.C. § 924(c), was erroneous, as the fact increasing the minimum term from five years to 10 years (i.e., discharge of a gun) had not been found by the trial jury. *United States v. Hoffman*, Nos. 21-2178 & 22-2103, 2023 WL 1775654 (3d Cir. Feb. 6, 2023). The Third Circuit remanded for resentencing.

This Court held the next resentencing hearing on June 1, 2023. Hoffman continued to represent himself. The court again established the pertinent guideline range of 420 months to life imprisonment (360 to life on Counts 1, 2, and 4; a mandatory consecutive 60 months on Count 3). Hoffman sought a variance based on family circumstances, and his own self-improvement, and presented another extensive allocution. Appx 431-452.

This Court further reduced the total sentence from 450 months, by 70 months. It imposed a total term of imprisonment of 380 months, to be followed by eight years of supervised release. The sentence consisted of concurrent terms of 320 months' imprisonment on Counts One and Two, and 240 months' imprisonment on Count Four, plus a term of 60 months' imprisonment on Count Three to be served consecutively. This Court elected not to again impose sentence on Count Six, charging a felon-in-possession violation of 18 U.S.C. § 922(g)(1), in light of the

decision in *Rehaif v. United States*, 588 U.S. 225 (2019). This appeal followed.

Hoffman once again appealed, this time electing to have an attorney handle the appeal. Appellate counsel then challenged the sufficiency of this Court's *Peppers / Faretta* colloquy, despite the fact that Hoffman had clearly and continuously demanded that he represent himself. Unfortunately, the Third Circuit panel agreed with Hoffman, and remanded this case for yet a fifth sentencing hearing.

Earlier today, Hoffman filed a 45-page sentencing memorandum, appended to which was another nine pages of exhibits, further attempting to extol Hoffman's virtues as a prisoner. However, all the flowery depictions of Hoffman "helping others" ignore his violent past, ignore the fact that he shot people, ignore the fact that he threatened the life of a DEA case agent, ignore his past prison misconduct, even ignoring that he used his own mother to attempt to smuggle heroin into a federal prison for him. Even worse, belying his vaunted claims of rehabilitation, Hoffman persists in denying the evidence that he shot two men, denying that he used a firearm at all, and denying salient aspects of his criminal history. Instead, he typically attempts to shift the blame for his conduct, citing a bump on his head when he was five years old, marijuana usage as a teenager, and blaming his parents, including the same mother he recruited to smuggle drugs for him. He continues to contest the many charges of prison misconduct. He even criticizes the quality of free health care he has received from the Bureau of Prisons which, despite Hoffman's own attempts at extracurricular drug use and poor nutritional choices, have well managed Hoffman's diabetes. In short, Hoffman continues his efforts to con this Court into granting him a further reduction.

## IV.    DISCUSSION

Hoffman has spent most of his life either committing crimes or in prison. At age 18, after committing a number of juvenile offenses, he committed a series of drug trafficking crimes, as well as a robbery in which he shot at the victims. As a result, he was in prison from November 1987 (age 18) until August 1999 (age 30), Revised PSR ¶ 98; he was engaged in large-scale drug trafficking, as charged in this case, by the summer of 2000 at the latest; he then committed the violent crimes proven here and has been in custody since January 20, 2001. He also had multiple violations of his parole from the Commonwealth of Virginia.

While serving his current sentence, Hoffman's disciplinary history has been poor. He has committed at least 19 infractions during his time in custody. He even had his own mother attempt to smuggle heroin into the federal prison for him. In sum, the current 380-month sentence, which is well below the bottom of the guideline range, should remain intact, to properly sanction Hoffman's conduct and to protect the public. There are no reasonable grounds for a further reduction.

## VI.    SENTENCING HEARING CONSIDERATIONS

### A.    **Statutory Maximum Sentence**

The Court may impose the following statutory maximum and mandatory minimum sentences for each of Counts One and Two:

a.    Count One, conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846: a maximum of life imprisonment with a mandatory minimum term of imprisonment of 10 years; a mandatory minimum of 5 years of supervised release up to lifetime supervised release; a $4,000,000 fine; and a $100 special assessment.

b.      Count Two, attempted possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846: a maximum of life imprisonment with a mandatory minimum term of imprisonment of 10 years; a mandatory minimum of 5 years of supervised release up to lifetime supervised release; a $4,000,000 fine; and a $100 special assessment.

c.      Count Three, using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c): maximum of life imprisonment with a mandatory minimum term of 5 years' imprisonment; lifetime supervised release; a $250,000 fine; and a $100 special assessment.

d.      Count Four, conspiracy to commit robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a), (b)(1), (b)(3): a maximum of 20 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 special assessment.

The total maximum and mandatory minimum sentence is a maximum of life imprisonment, a mandatory minimum of 15 years imprisonment; a mandatory minimum 5 years of supervised release up to lifetime supervised release; an $8.5 million fine; and a $400 special assessment. In addition, supervised release may be revoked if its terms and conditions are violated.

**B.      Sentencing Guidelines Calculation**

The presentence report and this Court correctly calculated the defendant's guidelines as a Total Offense Level of 37, with a Criminal History Category VI (based on 14 criminal history points), for a range of 360 months to life, plus a consecutive 60 months, for a total effective range of 420 months to life imprisonment. This Court then granted variances and sentenced Hoffman to a total of 380 months' imprisonment.

## VII.    ANALYSIS

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[3]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

### A.    <u>Sentencing Factors</u>

The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3)

---

[3] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

**B.    Application**

The relevant § 3553(a) factors will be discussed in turn.

### i.    The Nature and Circumstances of the Offense

This was a serious offense. As set forth above, Hoffman had a modus operandi of robbing his drug suppliers. In robbing Rosado and Vasquez, he shot both, imperiling their lives.

### ii.    The History and Characteristics of the Defendant

The defendant, age 57, has spent the vast majority of his adult life as a violent criminal and as a prisoner. While he claims to be reformed, he continues to deny responsibility for much of his actions.

### iii.    The Need for Sentence Imposed to Reflect Seriousness of the Offense, and
### iv.    Promote Respect for Law, and Provide Just Punishment

There is a strong need to impose a sentence that reflects the seriousness of the defendant's offenses, promotes respect for U.S. laws, and provides just punishment. Hoffman should not be permitted to make a mockery of the sentencing proceedings by continuously seeking largesse from the courts. Moreover, the citizens of the community must be spared from his violent tendencies.

### v.    The Need for Adequate Deterrence and Protection of Public

The need for adequate deterrence of this type of crime is significant. The defendant has

multiple prior convictions which included imprisonment, violations of state parole, and a tendency toward extreme violence. His unnecessary early release from incarceration will put the public at grave risk of harm.

### vi. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot continue to be adequately addressed by the Bureau of Prisons during incarceration.

### vii. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants

Hoffman orchestrated this violent drug robbery. Thus, his sentence should be much greater than those of co-defendants. Moreover, many similarly situated defendants who engage in violent drug trafficking crimes and shootings are serving life sentences. Thus, Hoffman suffers from no unwarranted disparities.

### viii. The Need for Restitution.

This is not a factor in this case at this time.

## VIII. CONCLUSION

Wherefore, the United States suggests that this Court re-impose its previous (2023) total sentence of 380 months' imprisonment, the same terms of supervised release, and the special assessments.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s David E. Troyer*
DAVID E. TROYER
Assistant United States Attorney
Chief, Narcotics & Organized Crime

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been electronically filed via ECF and thus served

on:

     Carina Laguzzi, Esquire

                                    */s David E. Troyer*             
                                    DAVID E. TROYER
                                    Assistant United States Attorney

Dated:  June 25, 2026.