IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MARCELLAS HOFFMAN,<br>Defendant. | CRIMINAL ACTION<br>NO. 01-169 |

**OPINION**

**Slomsky, J.** **October 20, 2026**

## I. BACKGROUND

On February 12, 2026, the United States Court of Appeals for the Third Circuit issued an Opinion finding that this Court's 2021 colloquy of Defendant Marcellas Hoffman was inadequate to determine whether Defendant could represent himself at his resentencing. (See Doc. No. 435.) Accordingly, the Third Circuit "vacate[d] [Defendant's] sentence and remand[ed] for the court to conduct a proper colloquy and resentence Hoffman." (Id. at 14.) After receiving the mandate from the Third Circuit (see id.), this Court set a status hearing for June 4, 2026. (Doc. No. 439.)

At the hearing held on June 4, 2026, the Court asked Defendant "whether or not you wanted counsel to be appointed to represent you at a resentencing or you wanted to proceed pro se." (Doc. No. 463 at 2–3.) The Court's inquiry was based in part on an email the Court received on May 27, 2026 from Samantha Stern, Esquire, who successfully represented Defendant on the appeal that resulted in the need for resentencing. Ms. Stern wrote as follows:

> Good afternoon,
>
> I am an AFPD [Assistant Federal Public Defender] in Pittsburgh and represented Marcellas Hoffman in his most recent Third Circuit appeal from CR 01-169. The

> case has been remanded and is now back with Judge Slomsky. I understand the Court has an upcoming status conference scheduled and would expect that Mr. Hoffman's interest in counsel will be addressed. In case it's helpful, I wanted to let you know that I have made inquiries about potential counsel for Mr. Hoffman. In particular, I have spoken with CJA [Criminal Justice Act] Panel attorney Carina Laguzzi, who has indicated her willingness to accept appointment to represent Mr. Hoffman in any resentencing proceedings that are scheduled should Mr. Hoffman elect to proceed with counsel.
>
> If the Court has any questions about this, please do not hesitate to reach out to Ms. Laguzzi or me.
>
> Thank you,
> Samantha Stern

(emphasis added)

Based on the discussion at the status hearing held on June 4, 2026 among the Court, Defendant, and Assistant United States Attorney David Troyer ("AUSA Troyer"), the Court understood Defendant to be requesting that counsel represent him at resentencing. Specifically, the Court believed that Defendant wished to be represented by (1) Samantha Stern, Esquire, the attorney who successfully represented Defendant on appeal, or (2) Carina LaGuzzi, Esquire, a panel attorney on the Criminal Justice Act ("CJA") list of attorneys who was recommended by Ms. Stern in the event Ms. Stern was unable to represent Defendant. (See Doc. Nos. 463 at 6, 501.)[1] During the June 4th hearing, the Court and Defendant had the following exchange:

> MR. HOFFMAN: I spoke with Samantha Stern, whose was the attorney on appeal, from out of Pittsburgh, the Third Circuit had appointed, and I asked her would the office would still be able to represent, even though they did the appeal. So they said, well, you need to bring that up with the Court when you get up there.
>
> Of course, I'm prepared to represent myself. But they did such a good job, she was like, well, you need to talk to the judge first and see what he say, because she

[1] The Court has listened to the audio recording of the June 4, 2026 Status Hearing and ordered that the Transcript prepared by Diversified Reporting Services, Inc. be corrected. This Opinion on the Motion to Recuse quotes from the corrected copy of the Transcript.

said, like we doing here today, that he will ask you whether you wanted counsel, do you want to continue to go pro se, or what you want to do, stand by, whatever.

So at this point, Your Honor, I don't know if that office could continue representing me. But she did made the suggestion to make that noted to you to see. And if not, you know, then I'm prepared to go pro se.

THE COURT: All right. I mean, I have, I have no objection to Ms. Stern continuing to represent you. I mean, obviously, you have a good relationship with her, based upon what you're saying.

MR. HOFFMAN: And that was what we talked about. I mean, because I'm quite sure, you know, the Court wanted me to have the representation back by counsel. And, you know, at this point and stage, we do have a working relationship on appeal. And that office is not a conflicted office.

THE COURT: The only thing I don't know is -- she works for the office of the Federal Public Defender.

MR. HOFFMAN: And –

THE COURT: I don't know whether the rules and regulations that govern her in Pittsburgh –

MR. HOFFMAN: Right –

THE COURT: In the Western District of Pennsylvania –

MR. HOFFMAN: Right –

THE COURT: Will allow her to travel here to represent – the Eastern District of Pennsylvania to represent somebody. This is the first time I've ever been asked to -- been confronted with this.

MR. HOFFMAN: Okay.

THE COURT: I just don't know. I have no objection –

MR. HOFFMAN: Well –

THE COURT: Just as a matter of you have a good relationship with her –

MR. HOFFMAN: Yes –

THE COURT: And you'd like her to represent you. I have no objection.

MR. HOFFMAN: Yeah, they did a great job. So, I mean, if Mr. Troyer don't have no objection to it. And I think, and for the best -- the benefit of everybody, the Court and Mr. Troyer's office and everybody else, I think at this particular time, Your Honor, counsel will be good for this resentencing hearing.

THE COURT: Okay.

MR. HOFFMAN: And if they can be representing me. And if not, you know, we can address it, you know, at that moment if we can't get it done that way.

THE COURT: Now, I did get, a few weeks ago, an email to my office from Ms. Stern saying she's aware of a lawyer in Philadelphia who is on our CJA list, who she would -- would be available to represent you. Obviously, we have a long list of lawyers on –

MR. HOFFMAN: Right –

THE COURT: The CJA list that could represent you. But I didn't know whether that lawyer met with you at all or –

MR. HOFFMAN: No. We, me and her spoke prior to me coming, and she did mention about the CJA lawyer, and I was going to bring that up as well. So if she can't, Your Honor, I mean, I would take the CJA lawyer and we can –

THE COURT: The person that she recommended –

MR. HOFFMAN: Yes, you know, and this will make it easy for everyone.

THE COURT: I believe her name is Carla Laguzzi, if I'm not mistaken.

MR. HOFFMAN: I'm not aware.

MR. TROYER: Carina Laguzzi. It would be Carina Laguzzi.

THE COURT: Carina Laguzzi.

MR. TROYER: Yes, I'm familiar with her.

THE COURT: Yeah, she's been on the list for many, many years, and has had other cases in front of me, so I'm familiar with her.

I may, with, with your, with the permission of both sides here, I would speak to Ms. Stern and find out what the protocol is, if she can represent you. And if not, do you want me to appoint Miss – the lawyer she recommended –

MR. HOFFMAN: Yes –

> THE COURT: Carina Laguzzi?
>
> MR. HOFFMAN: Yes. If not, if she can't, if Ms. Stern can't, then sure, I would allow it.
>
> THE COURT: And you meet with Ms. Laguzzi, Mr. Hoffman, and you make a decision whether you want –
>
> MR. HOFFMAN: Okay.
>
> THE COURT: I am not forcing anybody on you.
>
> MR. HOFFMAN: No, no, I know, I know, Your Honor.
>
> THE COURT: I'm not going to say you must use her.
>
> MR. HOFFMAN: And I just think, at this point, the appointed counsel would be able to help me with mitigation for sentencing better.
>
> THE COURT: Okay –
>
> MR. HOFFMAN: Being in custody where I'm at.

(See Doc. Nos. 463 at 6, 501).

After Ms. Stern informed the Court she was unable to represent Defendant, Ms. LaGuzzi met with Defendant at Federal Detention Center ("FDC") Philadelphia on June 11, 2026. (Doc. No. 450 at 2.) Thereafter, Ms. LaGuzzi informed the Court that, after her discussion with Defendant, he agreed to be represented by her at resentencing.[2] The Court then appointed Ms.

---

2 Defendant asserts that he never agreed to be represented by Ms. LaGuzzi. But in her Motion to Withdraw as counsel, she writes the following:

> On June 11, 2026, at the Court's direction, undersigned counsel traveled to the Federal Detention Center in Philadelphia to meet with Mr. Hoffman and confirm that he consented to Ms. LaGuzzi's appointment as counsel prior to the Court formally appointing her. During that visit, Ms. Laguzzi met with Mr. Hoffman for well over one hour to discuss the representation and the pending resentencing hearing. Following the meeting, and with Mr. Hoffman's express consent, undersigned counsel advised the Court that Mr. Hoffman agreed to her representation in connection with the resentencing proceedings. The Court thereafter appointed undersigned

LaGuzzi on June 16, 2026 as counsel for Defendant. (Doc. No. 441.) After the appointment, the Court scheduled a resentencing hearing for July 10, 2026. (Doc. No. 446.)

Unbeknownst to this Court, on July 1, 2026—before any resentencing hearing—Defendant filed an interlocutory appeal to the Third Circuit, arguing that this Court lacked jurisdiction over Defendant based on the 2021 inadequate colloquy under United States v. Peppers, 302 F.3d 120 (3d Cir. 2002). (Doc. No. 449.) In the interlocutory appeal, Defendant also claimed that Ms. Laguzzi was not his attorney. (Id. at 3.) The Notice of Appeal, which was filed on July 1, 2026, was entered on the Court's docket in Defendant's case on July 15, 2026, two weeks after it was filed. (See id.) On July 17, 2026, the Third Circuit ordered Defendant's interlocutory appeal "stayed pending entry of a Judgment and Commitment order by the District Court." (Doc. No. 453.)

In the interim, on July 10, 2026, at the scheduled resentencing hearing, the Court became aware that Mr. Hoffman could not appear for the resentencing hearing, as the Federal Detention Center and the United States Marshals Service had made an inadvertent scheduling error that prevented his transportation to the courthouse. Without Defendant's presence at the July 10, 2026 hearing, the Court could not proceed with resentencing. Nevertheless, the Court briefly took the bench, in recognition that a number of Defendant's family members and friends had traveled to attend the proceedings and were prepared to make statements on his behalf. The Court stated the following:

> THE COURT: The Court was prepared to move forward today, but I was notified around 2:00 or so that unfortunately there was some error at the Federal Detention Center,

---

> counsel, who promptly began reviewing the record and preparing for the resentencing hearing.

(Doc. No. 450 at 2.)

perhaps a mix-up is a better word than Mr. -- between the Detention Center across the street and United States Marshal Service. And I'm not sure whether their scheduling was not done correctly.

But in any event, Mr. Hoffman is not here today, so we can't proceed with the sentencing hearing. And I know that so many people come on Mr. Hoffman's behalf to testify that everyone, all we can do is just apologize to all his family members and friends who are here.

Now, Ms. Laguzzi, I might say that I don't want to -- not only don't I want to, I don't like to inconvenience people, so we can't proceed with the sentencing hearing but I could at least make a suggestion and you can get a transcript of this proceeding and order it on a daily basis and make it available to Mr. Hoffman.

But at the sentencing hearing on June 1, 2023, I heard from Barbara Jones. I don't know if Ms. Jones is here today. Is Ms. Jones here today? I see that she is.

I heard from Angela Hoffman. Is Angela Hoffman here today? Welcome.

And I heard from Darren (phonetic) Hoffman. Is Darren here today? I believe that's Mr. Hoffman's son.

And with Mr. Hoffman's consent at the next hearing, we could incorporate their testimony at this hearing. Not to inconvenience them to have to come back again, but I have a sense they'd want to be here anyway. But if people can come back and they want to submit a letter to the Court for me to consider, that's appropriate, too.

I do have a letter from a Marquis Wilson (phonetic). Has counsel seen that letter?

MR. TROYER: I have not, Your Honor.

MS. LAGUZZI: I have not either, Your Honor.

THE COURT: Here. Mr. Wilson apparently is someone who is at the FCI Allenwood with Mr. Hoffman. And I know we did get a number -- we got some letters from at the last sentencing hearing in 2023 from persons who are incarcerated with Mr. Hoffman.

***

THE COURT: All right. The Court is not happy as everyone in the courtroom that this sentencing can't go forward today. What has happened here today is, in terms of the reasons why Mr. Hoffman was not brought over, is extremely rarely. I've been a federal judge now for 17-1/2 years-plus, and I rarely see something like this happen. But it could happen.

So all we can do is apologize to everyone here. I know it's not the best thing we can say to people. I understand that, but it's the best we can do under the circumstances. We'll

> just have to reschedule this to the July 30th date. Is there anything else anyone wants to put on the record?
>
> MS. LAGUZZI: No, Your Honor.
>
> MR. TROYER: No, Your Honor.
>
> THE COURT: All right. I'll authorize you, Ms. Laguzzi, to go downstairs now to the Clerk's Office, order the transcript of this hearing on a daily basis, and make it available to Mr. Hoffman. All right?
>
> MS. LAGUZZI: I will do so, Your Honor.

(Doc. No. 451 at 3-4, 7-8.)

Moreover, at that same July 10, 2026 hearing in Defendant's absence, Ms. LaGuzzi suggested allowing Defendant's family members to speak on the record. (Id. at 5.) The Court disagreed, stating the following:

> THE COURT: Unfortunately, Mr. Hoffman would have to be here.
>
> ***
>
> THE COURT: And a defendant has a right to be here. So I can't consider anything that Mr. Hoffman hasn't consented to. So I'm not going to take any testimony without him being here and wanting for me to hear that testimony. So this is just -- I don't consider this a sentencing hearing at all. I'm just trying to come up with a solution. Not to inconvenience people, but it's strictly up to Mr. Hoffman what he wants to do.
>
> MS. LAGUZZI: Okay.
>
> THE COURT: He's the Defendant, and he'll have to make that decision after consulting with you.

(Id. at 6.)

After the hearing, Ms. LaGuzzi filed a six-page Motion to Withdraw as Defendant's Attorney, citing "a fundamental breakdown in communication and trust that is irretrievably broken." (Doc. No. 450 at 6.)

The Court set another hearing for July 30, 2026. (Doc. No. 447.) At this hearing, Defendant and Ms. LaGuzzi were present and the Court granted Ms. LaGuzzi's Motion to

Withdraw. (See Doc. No. 466.) After Ms. LaGuzzi left the courtroom, the Court conducted the required Peppers colloquy, finding that Defendant "knowingly and voluntarily desire[d] to proceed pro se" and waived his right to counsel. (Doc. No. 480 at 71.)

On July 23, 2026, prior to the July 30, 2026 hearing, Defendant Marcellas Hoffman filed the instant Motion to Recuse this Court under 28 U.S.C. § 144 or 28 U.S.C. § 455, which, due to mailing delays, was entered on the docket on July 31, 2026. (See Doc. Nos. 468, 473.) On August 3, 2026, the Government filed a Response in Opposition to Recusal. (Doc. No. 469.) Next, the Court granted Defendant ten (10) days to file a Reply. (Doc. No. 472.) Defendant filed several Replies. (Doc. Nos. 475, 477, 478.)

At the next status hearing on October 2, 2026, Defendant and counsel for the Government presented arguments on the Motion to Recuse. In support of his Motion to Recuse, Defendant submitted "Defense Exhibit[s]" 1-4, which contain emails from Nancy MacEoin, Esquire; Samantha Stern, Esquire; and Carina Laguzzi, Esquire, regarding Defendant's representation by counsel at his resentencing hearing. (See Doc. Nos. 493, 494.) In addition, Defendant submitted a letter dated May 3, 2001 from Special Assistant U.S. Attorney John Minges to the Clerk of Court with an attached Court Order dated September 9, 2005 granting the Government's Motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) in the case of United States v. Gary Oliver, E.D.P.A Crim. No. 01-0169-2. See United States v. Marcellas Hoffman, No. 23-2098, Doc. No. 17-5 at 31-34, 49-50. (See Doc. Nos. 493, 494.) Moreover, Defendant submitted the State Criminal History Records of Dennis Dunning (7 pages). (See Doc. Nos. 493, 495.) Defendant obtained these emails and documents when his former attorneys, Ms. Stern and Ms. Laguzzi, returned his case file to him after their representation of Defendant concluded. The Motion to Recuse (Doc. Nos. 468, 473) is now ripe for disposition.

## II. STANDARD OF REVIEW

In his Motion to Recuse, Defendant relies on 28 U.S.C. § 144 and 28 U.S.C. § 455 as setting the standard for recusal. These sections provide in relevant part as follows:

### A. Recusal under 28 U.S.C. § 144 ("Section 144")

Section 144 provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

Section 144 has both procedural and substantive requirements. Regarding the relevant procedural requirements first, the statute states that the party seeking recusal "may file only one such affidavit in any case." 28 U.S.C. § 144; see also Gedeon v. Att'y Gen., No. 22-3595, 2023 WL 5517555, at *3 (E.D. Pa. Aug. 25, 2023) (holding that it would not consider a movant's second affidavit under Section 144 because the movant "already had his bite at the apple under § 144, and the express terms of the statute permit him no more"). Additionally, the affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. This requirement is explained in the following passage:

> As other courts have noted, the purpose behind the § 144 requirement that a motion for recusal or disqualification contain a certificate of counsel is to prevent "abuse by protecting against obviously untruthful affidavits and unjustified attempts by a party to disqualify a judge." Heimbecker v. 555 Assocs., 2003 U.S. Dist. LEXIS 6636, *16 (E.D. Pa. Mar. 26, 2003) (citing Morrison v. United States, 432 F.2d 1227, 1229 (5th Cir. 1970)); see also Cizek v. Davis, 2010 U.S. Dist. LEXIS 23113, *4 (M.D. Pa. Mar. 11, 2010). The requirement of including a certificate of counsel applies even when the moving party is proceeding pro se.

> See Cizek, 2010 U.S. Dist. LEXIS 23113, at *4–5; United States v. Pungitore, 2003 U.S. Dist. LEXIS 20206, at *8 (E.D. Pa. Oct. 24, 2003) (finding the absence of a certificate of counsel is a valid basis to deny a motion to disqualify under Section 144, and affirming other courts in holding that "this procedural safeguard against abuse applies equally to pro se litigants"); Thompson v. Mattleman, Greenberg, Schmerelson, Weinroth & Miller, 1995 U.S. Dist. LEXIS 7100, at *4 (E.D. Pa. May 24, 1995) (following the requirements of the Fifth, Sixth, and Eighth Circuits in affirming that, "if the moving party is proceeding pro se, . . . the certificate may be signed by any member of the bar of this Court").

United States v. Cox, No. 11-99, 2012 WL 1986534, at *4 (D.N.J. June 4, 2012).

On the substantive requirements of Section 144, "[t]he mere filing of an affidavit under this section does not automatically disqualify a judge." United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir. 1973). Instead, disqualification will only result from a "timely and sufficient affidavit."[3] Id.; see also Mims v. Shapp, 541 F.2d 415, 417 (3d Cir. 1976) (noting that a court must assess "the legal sufficiency of the facts alleged to ascertain whether they support a charge of bias or prejudice"). Regarding the sufficiency of an affidavit, "[t]he test is whether, assuming the truth of the facts alleged, a reasonable person would conclude that a personal[,] as distinguished from a judicial bias[,] exists." Mims, 541 F.2d at 417.

Though the district court judge will accept allegations of the movant as true, "[c]onclusory statements and opinions . . . need not be credited." United States v. Vespe, 868 F.2d 1328, 1340 (3d Cir. 1989). For that reason, a legally sufficient affidavit must include "[f]acts including time, place, persons, and circumstances," and general accusations are not grounds for recusal. Townsend, 478 F.2d at 1074; see also Simmons v. United States, 302 F.2d 71, 76 (3d Cir. 1962) ("These statements are couched in generalities and fail to recite specific acts, which are required for a successful attack upon the qualifications of the Judge to sit in the proceedings [under Section 144] . . . ."); United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir.

---

[3] There is no dispute that Defendant timely filed his affidavit.

1993) (noting that "the facts averred [in a Section 144 affidavit] must be sufficiently definite and particular to convince a reasonable person that bias exists").

**B. Recusal under 28 U.S.C. § 455 ("Section 455")**

Section 455 "governs judicial disqualification based on the appearance of impropriety or actual bias." Gedeon v. Att'y Gen., No. 22-3595, 2023 WL 5517555, *2 (E.D. Pa. Aug. 25, 2023). Section 455 provides, in relevant part, the following:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .
>
> ***
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding; . . .

28 U.S.C. § 455.

Under this provision, the test for recusal is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003). Compared to Section 144, "[w]hen deciding a motion for recusal under Section 455(a) [or 455(b)], the court need not accept the Movant's allegations as true." Gedeon, 2023 WL 5517555, at *2 (quoting Cooney v. Booth, 262 F. Supp. 2d 494, 504 (E.D. Pa. 2003)) (noting that under Section 455, "the judge is permitted to contradict the factual allegations made in the movant's affidavit based on her own knowledge and the record.").

## III. ANALYSIS

Here, Defendant essentially alleges four reasons for recusal under Sections 144 and 455.

- First, the Court "pretend[ed]" to have jurisdiction over Defendant "when it was already lost" as a result of the Court's inadequate Peppers colloquy in 2021. (Doc. No. 468 at 4.)
- Second, the Court has colluded with Ms. Stern, Ms. LaGuzzi, and the Government to prevent him from asserting his claim that the Court lacked jurisdiction. (Doc. Nos. 468 at 5, 498.)
- Third, the Court failed to follow the Third Circuit's Mandate, which instructed the Court to "first" conduct a Peppers colloquy. Instead, Defendant alleges that the Court tried to "force a re-sentencing" upon him without a valid waiver of his pro se status. (Doc. No. 468 at 5.)
- Fourth, the Court "failed to docket" his filings "addressed specifically to the Third Circuit Court of Appeals." (Id.)

### A. Section 144 Recusal Analysis

As noted above, Section 144 provides that a timely affidavit averring that a presiding judge's "personal bias or prejudice either against him or in favor of any adverse party" may be grounds for disqualification when the affidavit "state[s] the facts and the reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144.

#### i. Defendant's Section 144 Motion is Procedurally Deficient

As a threshold matter, "only one such affidavit in any case" may be filed under Section 144, and that affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." Id. These twin procedural requirements of Section 144 are relevant in Defendant's case.

First, Defendant has filed a "second affidavit" in support of his disqualification arguments. (Doc. No. 475 at 1; Doc. No. 477 at 1.) As a result, the Court will only consider the affidavit submitted on July 23, 2026. (Doc Nos. 468, 473.) It will separately consider his

subsequent filings as a Reply to the Government's Response in Opposition to the Motion to Recuse—not as an additional affidavit under Section 144.

Second, Section 144 requires an affidavit to be accompanied by a "certificate of counsel of record stating that [the affidavit] is made in good faith." 28 U.S.C. § 144. "The purpose of the certificate requirement is to prevent submission of untruthful affidavits and unwarranted attempts of a party to disqualify a judge." United States v. Pungitore, No. 97-2972, 2003 WL 22657087, at *2 (E.D. Pa. Oct. 24, 2003). Although Defendant is without counsel, district courts in the Third Circuit have held that "[t]he requirement of including a certificate of counsel applies even when the moving party is proceeding pro se." Cox, 2012 WL 1986534, at *4 (collecting cases). When a movant under Section 144 is proceeding pro se, "any member of the bar may sign the certificate." United States v. Zinner, No 95-48, 2020 WL 5554488 at*4 (E.D. Pa. Sept. 16, 2020), aff'd, 845 F. App'x 105 (3d Cir. 2021). Because Defendant's Motion for Recusal and its accompanying affidavit do not include a signed certificate by a member of the bar, it is insufficient under Section 144.

**ii. Defendant's Section 144 Affidavit Also Fails on the Merits**

Beyond those procedural deficiencies, Defendant's Motion to Recuse under Section 144 fails on the merits because it is not a "sufficient affidavit." In this regard, the Court will address each of Defendant's proffered grounds for recusal in turn. In doing so, the Court must accept the allegations of Defendant as true, but need not credit any conclusory allegations. See United States v. Boyle, No. 17-197, 2022 WL 3357451, at *3 (E.D. Pa. Aug. 12, 2022).

**1. The Court "Pretended" to Maintain Jurisdiction**

First, Defendant alleges that the Court "pretend[ed]" to have jurisdiction over Defendant "when it was already lost" due to the Court's inadequate Peppers colloquy in 2021. (Doc. No.

468 at 4.) Though repackaged in various ways, this is Defendant's core reason for recusal: that the Court's continuing exercise of jurisdiction over him is unlawful because of the earlier inadequate Peppers colloquy. (See id.) This is a legal argument, not a factual one.

The Court has already examined Defendant's filing on his jurisdictional issue and heard argument on it. (Doc. No. 480 at 66–70 (oral argument)); (see also Doc. Nos. 456, 457, 468 (arguing in briefs that the Court lost jurisdiction under Johnson v. Zerbst, 304 U.S. 458, 468 (1938))). On July 31, 2026, the Court denied Defendant's Motion objecting to the Court's jurisdiction over him, finding that (1) the Third Circuit instructed this Court to resentence Defendant, and (2) as the Third Circuit held in similar cases, the proper remedy for an inadequate Peppers waiver colloquy is to conduct another one—not to forfeit jurisdiction over Defendant. (Doc. No. 471.)

Defendant's contention that the Court must recuse itself under Section 144 for maintaining jurisdiction is flawed for two additional reasons. First, to the extent that Defendant disagrees with the Court's July 31, 2026 decision on the jurisdictional claims, such disagreement is not the basis for recusal under Section 144. See In re TMI Litig., 193 F.3d 613, 728–29 (3d Cir. 1999) (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir. 1990)) (noting that "disagreement with a judge's determinations and rulings cannot be equated with the showing required to so reflect on impartiality as to require recusal[,]" as those disagreements are "subject to review on appeal"). Second, Defendant's bare assertion that the Court was "pretending" to have jurisdiction—without any additional factual support—is a conclusory allegation, which, under Section 144, will not be credited. In any event, the Third Circuit has instructed this Court to resentence Defendant and the Court will follow the mandate of the Third Circuit.

In support of his argument, Defendant frequently cites an exchange during oral argument on his appeal in the Third Circuit between Defendant's attorney on appeal, Samantha Stern, Esquire, and Third Circuit Judge Peter J. Phipps. (Doc. No. 468 at 4; Doc. No. 475 at 2, 5.) In the exchange, Judge Phipps suggested that "old Supreme Court cases" stand for the proposition that a district court loses jurisdiction when it fails to provide an adequate colloquy to protect the Sixth Amendment right to counsel. (See id.) But comments at oral argument between a judge and counsel do not constitute binding precedent, only the final decision of the Court does. And more importantly, if Defendant disagrees with this Court's decision that it has jurisdiction to resentence him, the proper way to challenge that decision is through the appellate process, not a motion to recuse.

**2. The Court "Colluded" With Defendant's Former Attorneys and the Government**

Second, Defendant contends that the Court "colluded" with AUSA Troyer and Defendant's former attorneys, Samantha Stern and Carina LaGuzzi to prevent him from asserting his jurisdictional arguments. (Doc. No. 468 at 5.) Specifically, in his filings, Defendant alleges that the Court communicated with those attorneys to "deliberately steer[] the District Court away from the jurisdictional issue." (Doc. No. 475 at 13.) At the same time, through oral argument at the status hearing on October 2, 2026, Defendant further alleges that those attorneys colluded amongst themselves and with Nancy MacEoin, Esquire, a conflicted Assistant Federal Public Defender from the Federal Community Defender Office for the Eastern District of Pennsylvania, to violate his Sixth Amendment rights by attempting to coordinate his representation by counsel for resentencing, though Defendant acknowledges that he "didn't think" the Court knew of these efforts. (See Doc. No. 498 at 12-27, 14.) Separately, citing a letter dated May 3, 2001 from Special Assistant U.S. Attorney John Minges to the Clerk of Court with an attached Court Order

dated September 9, 2005 granting the Government's Motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) in the case of United States v. Gary Oliver, E.D.P.A Crim. No. 01-0169-2, Defendant argues that the Court, in addition to the "prosecutor's office," committed a Brady violation by repeatedly resentencing Defendant if it had knowledge that his co-conspirator, Gary Oliver, "testified under oath falsely" at Defendant's criminal trial. (See Doc. Nos. 493, 494, 498 at 29-33, 49.) Defendant appears to make the same argument as to the State Criminal History Records of Dennis Dunning, which he argues were "never brought to [his] attention to be challenged." (Doc. Nos. 493, 495, 498 at 37-38.) Upon the Court's inquiry into the precise basis for Defendant "highly question[ing]" the impartiality of proceedings, Defendant simply answered that his suspicions were "[b]ased on the totality." (See Doc. No. 498 at 33.) As it must, the Court will accept Defendant's allegations as true under Section 144, but conclusory statements and opinions need not be credited. See Boyle, 2022 WL 3357451, at *3.

Defendant's allegation of "collusion" is conclusory and merely an opinion because—beyond identifying the persons he accuses engaged in collusion—he fails to include facts like "time, place . . . and circumstances" showing that the Court harbors a personal bias or prejudice against him. See Townsend, 478 F.2d at 1074. The closest Defendant comes to alleging non-conclusory factual averments are two allegations of ex parte communications: (1) appointing Ms. Laguzzi as Defendant's attorney, and (2) "allowing" ASUA Troyer "to tell the U.S. Marshal(s) not to bring [him] into the Courtroom for" the hearing on July 10, 2026. (Doc. No. 468 at 10.)

In some cases, legally sufficient allegations of ex parte communications may provide a basis for disqualification. See In re Kensington Int'l, 368 F.3d at 293, 307, 309 (holding that disqualification of a district court was appropriate when judge "had extensive ex parte

communications" with parties and discussions about the merits of the case with experts that the judge himself had appointed"). However, "ex parte communications alone[,] in the absence of any conflict of interest," do not require recusal. Id. at 305. Additionally, when "related to non-merits issues [or] for administrative matters," ex parte contacts are "tolerated." In re Sch. Asbestos Litig., 977 F.2d 764, 789 (3d Cir. 1992).

In the present case, both allegations of improper ex parte communications fail to demonstrate bias. Regarding Defendant's first allegation that the Court improperly spoke with Ms. Stern and Ms. LaGuzzi about potentially representing him, this was done at his request, with his approval, and involved a non-merits issue. In addition, Defendant provides another basis to show that a conflict existed: the Court appointed Ms. LaGuzzi who is "an ex-prosecutor." (Doc. No. 468 at 5.) The notion that Ms. LaGuzzi, as an ex-prosecutor who is now a criminal defense attorney, would not act in Defendant's best interest is conclusory and mere speculation. A court may not rely on "purely speculative" theories of bias when determining disqualification under Section 144. Boyle, 2022 WL 3357451, at *5. Moreover, there was never a discussion between the Court and Defendant's counsel about the latter not pursuing Defendant's jurisdictional claim.

Further, Defendant points to Ms. LaGuzzi's filings on her Motion to Withdraw as Counsel as evidence of the Court's bias. In her Motion to Withdraw and in a subsequent affidavit filed on the record, Ms. LaGuzzi averred that Defendant "makes statements [in his pro se filings] concerning his communications with undersigned counsel that are materially inaccurate." (Doc. No. 450 at 5); (see also Doc. No. 458 at 2 ("The undersigned possesses written communications from the defendant that directly contradict his assertion that he did not authorize counsel to represent him during the resentencing proceedings.").) However, those filings occurred after the Court appointed her and do not reflect on the Court's impartiality.

Rather, those filings reflect the stark differences that developed between Defendant and Ms. LaGuzzi in the course of their short attorney-client relationship. In sum, Defendant's "disagreement with the appointment[] [of counsel] cannot be conflated with the required showing of partiality" under the recusal statutes. Boyle, 2022 WL 3357451 at *8 (citing In re TMI Litig., 193 F.3d at 728) (holding that the Court's appointment of CJA counsel and stand-by counsel for a defendant did not violate either Section 144 or Section 455).

This conclusion is supported by two additional considerations. First, as noted earlier, the Court's appointment of Ms. LaGuzzi after the June 4, 2026 status hearing was unrelated to the merits of the underlying proceedings in this case. See In re Whitchurch, 639 F. App'x 772, 775 (3d Cir. 2016) (finding recusal improper when "there [was] no indication that substantive advice was either solicited or offered during the calls [between the court and counsel]"). Second, though ex parte communications are generally disfavored, a judge is permitted to "initiate, permit, or consider ex parte communications as authorized by law." Code of Conduct for U.S. Judges Canon 3 § A(4)(a) (2026). As relevant here, the Criminal Justice Act provides that "[u]nless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him." 18 U.S.C. § 3006A(b). Though Defendant later waived his right to representation by counsel at sentencing during the July 30, 2026 hearing, he had not waived that right at the June 4, 2026 status hearing. Compare Peppers, 302 F.3d at 129 ("We have required defendants to assert the right to proceed pro se affirmatively and unequivocally"), with (Doc. No. 463 at 4) (Defendant stating on June 4, 2026 that "I think at this particular time, you know, counsel will be good for this resentencing hearing."). Therefore, any ex parte communication to facilitate the appointment of counsel for Defendant based on comments he

made at the June 4, 2026 status hearing was—at that time—authorized by law and related to a non-merits matter.

Defendant's second allegation of "collusion" is that the Court "allowed" ASUA Troyer "to tell the U.S. Marshal(s)" not to bring him into the Courtroom on July 10, 2026. (Doc. No. 468 at 10.) Again, this allegation is somewhat conclusory and, in fact, the Court never allowed it. The reason that Defendant was not brought to court on July 10, 2026 is noted by the Court above. Because this allegation is "based on suspicion, innuendo, speculation, or conjecture," it does not "warrant recusal under Section 144." Cooney, 262 F. Supp. 2d at 502.

Defendant's next allegation, that emails between attorneys Ms. Stern, Ms. Laguzzi, and Ms. MacEoin concerning actions to secure counsel for his resentencing demonstrate a concerted effort to violate his Sixth Amendment rights, provides no basis for recusal either. Such efforts were particularly appropriate here, where Defendant expressly indicated that he wanted counsel at the June 4, 2026 hearing. (See Doc. No. 463, 501.) The communications from the three attorneys, without more, do not deprive Defendant of his right to counsel or to represent himself, as the mere act of facilitating a referral does not establish a constitutional violation. In particular, Defendant fixates on the fact that Ms. MacEoin, an Assistant Federal Public Defender from the Federal Community Defender Office for the Eastern District of Pennsylvania, possessed a legal conflict that would have prevented her office from representing him. That Ms. MacEoin may have possessed a conflict does not preclude her from making a referral, and, as noted, her referral here does not establish a violation of Defendant's Sixth Amendment rights. In any event, the communications with which Defendant takes issue concern the actions of individual attorneys and have no connection to the Court's conduct. Defendant even acknowledged that he "didn't think" the Court was aware of the communications. (See Doc. No. 498 at 14.) Because this

allegation is also "based on suspicion, innuendo, speculation, or conjecture," it does not "warrant recusal under Section 144." Cooney, 262 F. Supp. at 502.

Further, Defendant's reliance on a publicly filed document, the letter dated May 3, 2001 from Special Assistant U.S. Attorney John Minges to the Clerk of Court with an attached Court Order dated September 9, 2005 granting the Government's Motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) in the case of United States v. Gary Oliver, E.D.P.A Crim. No. 01-0169-2, does not establish a Brady violation or provide any basis for recusal. (See Doc. No. 494.) The fact that the document was publicly available and located by Samantha Stern, Defendant's own appellate attorney, undermines any suggestion that the Government suppressed the evidence. (See Doc. No. 498 at 29.) Even assuming Defendant could establish a Brady violation here, that allegation alone would not establish a basis for the Court's recusal. The same is true regarding Defendant's similar argument regarding the State Criminal History Records of Dennis Dunning. Accordingly, Defendant's allegation of prosecutorial misconduct falls short of the standard for recusal, as it contains no facts connecting the Court to the alleged misconduct or demonstrating personal bias.

### 3. The Court Failed to "First" Conduct a Peppers Colloquy on Remand

Third, Defendant avers that the Court failed to follow the Third Circuit's mandate by failing to "first" conduct a Peppers colloquy on remand, and instead tried to "force a re-sentencing" upon him without a valid waiver of his pro se status. (Doc. No. 468 at 5.) By way of context, the Third Circuit "remand[ed] for the court to conduct a proper colloquy and resentence Hoffman." (Doc. No. 435 at 14.)

Taken as true, Defendant's allegations are insufficient to show "personal bias or prejudice." 28 U.S.C. § 144. If Defendant disagrees with the Court's decision to first conduct a

status hearing on June 4, 2026 to determine whether Defendant "wanted counsel to be appointed" or "wanted to be pro se" at his resentencing, (see Doc. No. 463 at 2–3), Defendant may raise that disagreement on appeal. See In re TMI Litig., 193 F.3d at 728–29 (holding that disagreements with a court's determinations do not "reflect on impartiality as to require recusal" and may instead be raised on appeal). But it was Defendant who asserted that he wanted counsel to represent him at the resentencing. He had the option to do so or to request that the Third Circuit judgment be strictly followed. The Court was not forcing counsel on him; that was strictly his decision. Defendant met with Ms. LaGuzzi and she informed the Court that he wanted her to represent him. That was his right to do so.

#### 4. The Court Failed to Docket his Filings Addressed to the Third Circuit

Fourth, Defendant contends that clerks "failed to docket" his filings "addressed specifically to the Third Circuit Court of Appeals." (Doc. No. 468 at 5.) Defendant is likely referring to two post-remand filings he submitted to the Third Circuit: (1) his interlocutory appeal dated July 1, 2026, in which he asserted that this Court had lost jurisdiction over him; and (2) his Motion for Writ of Mandamus and for Injunctive Relief dated July 26, 2026, in which he requests that a list of documents "be docketed on the district court's docket." (See Doc. No. 449; Appeals Docket 26-3014, Doc. No. 1.)

At the outset, Defendant does not articulate what role a district court judge or his staff have in docketing filings addressed to a court of appeals. In fact, it appears that his primary target is not the presiding sentencing Judge here, but instead the Clerk's Office for the Eastern District of Pennsylvania, the entity that handles court filings. More to the point, Defendant cites to no authority—nor can this Court find any—that a district court clerk's alleged failure to docket filings addressed to a court of appeals reflects on a district judge's "personal bias or

prejudice" against a defendant under Section 144. Moreover, all of Defendant's mailings to the Court will be filed of record in his case.[4] Thus, Defendant's final argument does not require recusal here.

In sum, because Defendant's affidavit is procedurally deficient and substantively insufficient, even when the factual allegations are taken as true, recusal under Section 144 is not warranted.

**B. Section 455 Recusal Analysis**

In addition to Section 144, Section 455 requires recusal of a judge if "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b) also requires disqualification in the following scenarios relevant here: (1) "where [a judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;" or (2) when he has a "financial interest" or "any other interest that could be substantially affected by the outcome" in the matter. Id. § 455(b)(1), (4).

Compared to the test for disqualification under Section 144, Section 455's test is an objective one, asking "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In re Kensington Int'l Ltd., 353 F.3d at 220. Moreover, "[w]hen deciding a motion for recusal under Section 455(a) [or 455(b)], the court need not accept the Movant's allegations as true." Gedeon, 2023 WL 5517555, at *2 (quoting Cooney, 262 F. Supp. 2d at 504) (noting that under Section 455, "the judge is permitted to contradict the factual allegations made in the movant's affidavit based on her own knowledge and the record").

4 Because all documents Defendant sent to this Court have been docketed, he withdrew his Motion for a Writ of Mandamus in the Third Circuit. This request was granted. See United States v. Marcellas Hoffman, No. 26-3014 (3d Cir. 2026).

**i. Defendant's Section 455 Disqualification Fails on the Merits**

Defendant does not distinguish between the reasons for disqualification under Section 144 and Section 455.[5] As it did above, the Court will address each proffered ground for disqualification in turn.

**1. The Court "Pretended" to Maintain Jurisdiction**

First, Defendant contends that the Court "pretend[ed]" to have jurisdiction over Defendant "when it was already lost" due to the Court's inadequate Peppers colloquy in 2021. (Doc. No. 468 at 4.) As noted above, regarding this argument, Defendant has not made a showing of bias under Section 144, and his argument under Section 455 fares no better.

Since the time the case was remanded for a proper colloquy and resentencing, the Court has considered Defendant's jurisdictional arguments asserted (1) in his filings and (2) at the hearing held on July 30, 2026. As explained in the Court's July 31, 2026 Order, it disagrees with those arguments. (Doc. No. 471.) Such disagreement, without more, does not demonstrate that the Court is merely "pretending" to maintain jurisdiction. It is maintaining jurisdiction. As a result, because a reasonable person would not conclude that the Court's impartiality may be questioned on the basis of this allegation, it will not support recusal under Section 455.

**2. The Court "Colluded" With Defendant's Former Attorneys and the Government**

Second, Defendant asserts that the Court has colluded with Ms. LaGuzzi, Ms. Stern, and AUSA Troyer to prevent him from asserting his claim that the Court lacked jurisdiction. (Doc. No. 468 at 5.) The crux of Defendant's contention here also includes that the Court (1) appointed "ex-prosecutor" Ms. LaGuzzi as his counsel against his will, and (2) "allowed" AUSA

[5] Defendant asserts additional reasons for disqualification in his Replies. (Doc Nos. 475, 477–78.) The Court will address those separately under Section 455 infra.

Troyer to tell the U.S. Marshals not to bring Defendant from the Federal Detention Center for the July 10, 2026 hearing. (Id.) As explained in detail above, Defendant's allegations are not sufficient to infer bias under Section 144. Moreover, under Section 455, the Court need not credit these allegations, and they fail for the same reasons noted supra.

Insofar as his first argument is concerned, Defendant might have believed that "[i]n his heart," he always wanted to represent himself at resentencing. (Doc. No. 473 at 4.) Defendant may have instead changed his mind after the June 4, 2026 hearing, ultimately deciding to proceed pro se. But the Court is not a mind reader. His representations on the record on June 4, 2026 demonstrate that—at the very least—Defendant did not wish at the resentencing to waive his right to counsel, which must be done "affirmatively and unequivocally." See Peppers, 302 F.3d at 129. The Court acted based on those representations. Further, when Defendant later represented to the Court that he wished to proceed pro se, the Court on July 30, 2026 conducted the Peppers colloquy, excused Ms. LaGuzzi from the case, and allowed Defendant to proceed pro se and to represent himself at resentencing.

As for Defendant's second contention that the Court "allowed" AUSA Troyer to tell the U.S. Marshals not to bring Defendant into Court on July 10, 2026, this allegation is, at best, speculative. The Court did not communicate with AUSA Troyer until taking the bench that day on June 10, 2026. In any event, the Court was notified that some "error" or "mix-up" on the part of the Federal Detention Center and the United States Marshals Service—not some action taken by the AUSA—was responsible for Defendant's absence. (Doc. No. 451 at 3.)

Defendant's next argument concerning the communications between Ms. MacEoin, Ms. Stern, and Ms. Laguzzi to arrange representation for his resentencing fails under Section 455 too. Even if the attorneys' communications could support an inference of improper coordination,

Defendant identifies no facts suggesting that the Court knew about or participated in their alleged conspiracy to violate his Sixth Amendment right to counsel. Therefore, Defendant's allegation here, without more, would not cause a reasonable person to question the Court's impartiality.

The Brady violations Defendant alleges do not satisfy the standard under Section 455 either, as Defendant identifies no conduct by the Court relating to the documents at issue or their disclosure. Indeed, the alleged misconduct inherent in a Brady violation concerns the prosecution, not the Court's impartiality. Absent facts connecting the Court to the alleged Brady violation, a reasonable person would have no basis to question the Court's impartiality.

Considering the foregoing, a reasonable person would not conclude that the Court colluded with attorneys in this case or harbored bias against Defendant under Section 455.

**3. The Court Failed to "First" Conduct a Peppers Colloquy on Remand**

Third, Defendant contends that the Court failed to follow the Third Circuit's mandate, which instructed the Court to "first" conduct a Peppers colloquy, and instead tried to "force a re-sentencing" upon him without a valid waiver of his pro se status. (Doc. No. 468 at 5.) His third allegation is belied by the record and does not warrant additional analysis under Section 455. Defendant may raise this issue on appeal. In any event, on July 30, 2026, the Court has conducted a Peppers colloquy.

**4. The Court Failed to Docket his Filings Addressed to the Third Circuit**

Fourth, Defendant alleges that the Court "failed to docket" his filings "addressed specifically to the Third Circuit Court of Appeals." (Doc. No. 468 at 5.) As noted in the Court's Section 144 analysis on this allegation, it is unclear whether Defendant is ascribing blame leave

the Court or on the Clerk's Office for the Eastern District of Pennsylvania. Moreover, under Section 455, Defendant's characterization of the Court's actions are inaccurate.

The two filings that Defendant is likely referring to in his allegation are his interlocutory appeal dated July 1, 2026 (Doc. No. 449) and his Motion for Writ of Mandamus and for Injunctive Relief dated July 26, 2026 (Appeals Docket 26-3014, Doc. No. 1). First, as shown on the docket, the Court received his Notice of Appeal on July 15, 2026, thirteen (13) days after it was sent to and filed in the Third Circuit. (See Doc. No. 449.) Second, the Court did not receive a notification of Defendant's Motion for Writ of Mandamus and for Injunctive Relief until August 11, 2026—four (4) days after it was received by the Third Circuit.

Consequently, the Court did not "fail" to docket filings with the Third Circuit. As a result, the fourth allegation of bias does not provide grounds for recusal under Section 455. And, as noted above, all of Defendant's mailings to this Court are docketed on the record.

**ii. Defendant's Other Allegations under Section 455**

Though not raised in the initial Motion to Recuse (Doc Nos. 468, 473), three other arguments are lodged by Defendant in his Replies. (See Doc. No. 475, 477–78.) The Court will address them in turn below.

First, Defendant takes issue with the Court's recitation of the applicable penalties on questions five and six on the Peppers colloquy at his July 30, 2026 hearing by "convert[ing] sentencing penalties count-by-count stating that all counts could be ran consecutively." (See Doc. No. 478 at 4; Doc. No. 477 at 4.) As an initial matter, the Court modified questions five and six at the hearing after both Defendant and the AUSA informed the Court of issues with the recitation of penalties. (See Doc. No. 480 at 39–62.) More to the point, though, Defendant may

raise this issue on appeal—just as he has done before. It does not bear on the Court's impartiality.

Second, Defendant alleges in one of his Replies that the Court must be disqualified under Section 455(b)(4) due to a "personal and fiduciary interest" in the civil suit that Defendant plans to file against the Court for "acting out of 'clear jurisdiction' for over 5 years when the Judge kept resentencing the defendant over and over without jurisdiction." (Doc. No. 477 at 2; see also Doc. No. 478 at 2.) However, naming "the presiding judge . . . as a defendant in another suit is not sufficient to merit this Court's disqualification in this litigation." Gedeon, 2023 WL 5517555, at *4 (collecting cases holding the same, and noting that "[t]he federal court system could not function . . . if the naming of a judge as a defendant in a 'truly meritless lawsuit' resulted automatically in judicial disqualification").

Third, Defendant claims in one of his Replies that Ms. LaGuzzi violated 18 U.S.C. § 1791 and 28 C.F.R. § 540.52. (Doc. No. 475 at 11.) Put simply, allegations of Ms. LaGuzzi's violations of federal law do not reflect on the Court's impartiality.

Overall, Defendant's allegations for recusal are factually insufficient, conclusory, and contradicted by the record. Therefore, they do not warrant recusal under Section 455.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Recuse (Doc. Nos. 468, 473) and the Motion for a Hearing on the Motion to Recuse (Doc. No. 476)[6] will be denied. An appropriate Order follows.

---

[6] On August 14, 2026, Defendant also filed a Motion for a Hearing on the Motion to Recuse (Doc. No. 476). In the Motion, Defendant requests a hearing to "provide the Court with false statements made by Ms. LaGuzzi, and his family would testify as to their knowledge to what they witness[ed]. . . ." (Id. at 3.) Defendant also requests a hearing to inspect all ex parte communications that the Court had with the Government and his former attorneys. (Id. at 2.)

The Court has addressed Defendant's grounds for recusal in this Opinion. On this record, a hearing is not necessary and would only serve to delay following the Third Circuit's instructions to resentence Defendant. (See Doc. No. 435 at 14; Doc. No. 453.) In any event, Defendant already presented arguments and submitted exhibits related to the Motion to Recuse at the status hearing on October 2, 2026. (See Doc. No. 498.) Accordingly, the Court will deny Defendant's Motion for a Hearing on the Motion to Recuse. (Doc. No. 476.)